UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHELLEY KOSEN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN EXPRESS FINANCIAL ADVISORS, INC. ("AEFA"), IDS FINANCIAL SERVICES, INC., AMERICAN EXPRESS FINANCIAL CORPORATION and AMERICAN EXPRESS COMPANY, <br><br> Defendants. | Civil Action No. 1:02CV00082(HHK) <br><br> CLASS ACTION <br><br> <u>ORAL ARGUMENT REQUESTED</u> |

## <u>DEFENDANTS' MOTION TO ENFORCE RELEASE AND CONSENT DECREE AS TO CLAIMS OF SUSAN SELTZER BEFORE THE NASD</u>

Defendants, by their undersigned counsel, hereby move the Court for an order granting their Motion to Enforce Release and Consent Decree as to Claims of Susan Seltzer before the National Association of Securities Dealers.

This Motion is based on the Release and Agreement signed by Susan Seltzer, the Consent Decree, the Order and Judgment, and other orders of this Court in the above-captioned matter, the pleadings and records herein, the enclosed proposed order, the accompanying Memorandum and the Declarations of Edward S. Magarian and Ahna M. Thorsen, with attached exhibits.

| | |
|---|---|
| DATED: January 23, 2004 | Respectfully submitted, |

<div style="margin-left: 40%;">

/s/ Ralph A. Taylor, Jr
Ralph A. Taylor, Jr. (DC Bar #225219)
Dorsey & Whitney LLP
Suite 400 South
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2533
(202) 442-3000
(202) 442-3199 - Fax
taylor.ralph@dorsey.com

Edward B. Magarian (pro hac vice)
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Counsel for Defendants
American Express Financial Advisors, Inc.
IDS Financial Services, Inc.
IDS Life Insurance, Inc.
American Express Financial Corporation
American Express Company

Ahna M. Thoresen*
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis MN 55402-3901

Co-Counsel for Defendant American
  Express Financial Advisors, Inc.


*Not admitted to practice in this Court.

</div>

4814-5631-0784\1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHELLEY KOSEN, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>AMERICAN EXPRESS FINANCIAL )<br>ADVISORS, INC. ("AEFA"), IDS )<br>FINANCIAL SERVICES, INC., )<br>AMERICAN EXPRESS FINANCIAL )<br>CORPORATION and AMERICAN )<br>EXPRESS COMPANY, )<br>)<br>Defendants. )<br>) | Civil Action No. 1:02CV00082(HHK)<br><br>CLASS ACTION |

## MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE RELEASE AND CONSENT DECREE AS TO CLAIMS OF SUSAN SELTZER BEFORE THE NASD

American Express Financial Advisors Inc. ("AEFA") submits this motion to the Court in order to enforce the terms of an Agreement and Release ("Release") signed by named plaintiff and class member Susan Seltzer ("Seltzer") in this action. The Release was given pursuant to a class-wide settlement agreement that was approved by this Court.

After signing the Release, Seltzer submitted a Statement of Claim to the National Association of Securities Dealers ("NASD") that seeks recovery from AEFA based on the same claims and allegations that were at issue in this case. Because Seltzer released those claims, and agreed not to institute any other proceedings related to the matters released, this Court should enforce the Release and settlement agreement as to Seltzer and enter an order enjoining her from pursuing her claims before the NASD.

## FACTS

**Seltzer's affiliation with AEFA.**

Seltzer was an American Express financial advisor from January 29, 1997 until August 13, 1999. (Magarian Decl. ¶ 2.) Seltzer voluntarily terminated her position as a financial advisor in August 1999 in order to accept a position as a brokerage sales consultant at AEFA's home office. She worked in that position until April of 2001. (*Id.*)

**Seltzer's allegations of discrimination.**

On or about October 4, 1999, while she was still an AEFA employee, Seltzer filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). In that charge she alleged that throughout her employment with AEFA, she had been discriminated against in the terms and conditions of her employment on the basis of her gender and age. (*See* Charge of Discrimination p. 2, Magarian Decl. Ex. 1.) She also alleged that AEFA had engaged in a pattern or practice of discrimination against similarly situated female financial advisors.

In her Charge of Discrimination, Seltzer claimed that she had been constructively discharged from her financial advisor position. Under a heading titled "Constructive Discharge," Seltzer claimed: "I was forced to give up my position as a Financial Advisor because I was not being treated equitably with the younger male Advisors who were less experienced, less productive and less qualified than I was." (Charge of Discrimination p. 8, Magarian Decl. Ex. 1.)

Seltzer subsequently became a named plaintiff in this lawsuit, along with sixteen other women who also filed charges with the EEOC. Like the other named plaintiffs, she was represented by the law firms of Sprenger & Lang, PLLC and Miller-O'Brien, PLLP (hereinafter referred to as "Class Counsel").

In 2000, before the EEOC had issued any right-to-sue letters and hence before any complaint had been filed, the parties agreed to attempt to negotiate a settlement of the individual and class-wide allegations of discrimination. (Order Approving Consent Decree p. 2.) They then spent many months engaged in formal mediation sessions and follow-up settlement discussions. Negotiations concluded on January 17, 2002 with the execution of a Consent Decree. (Consent Decree p. 3.)

**Seltzer's termination.**

On April 13, 2001, during the period that the Company was negotiating with Class Counsel concerning the discrimination charges filed by Seltzer and the other named plaintiffs, AEFA terminated Seltzer from her position as a brokerage sales consultant. (Magarian Decl. ¶ 6.) AEFA concluded that Seltzer had engaged in offensive and inappropriate workplace conduct that had irreparably damaged her relationships with her co-workers and managers. (*Id.*)

NASD Rules and By-laws require AEFA and other member securities firms to complete a Uniform Notice of Termination of Securities Industry Registration, referred to as a "Form U-5," upon the termination of a representative who is registered with the NASD.[1] (Magarian Decl. ¶ 3.) The Form U-5 requires the securities firm to designate whether the separation was voluntary, involuntary, a requested resignation, or "other." For separations that are involuntary, requested, or "other," the securities firm must give a reason for the termination.

When AEFA informed Seltzer that it intended to terminate her, it offered her the option of voluntarily resigning. (Magarian Decl. ¶ 7.) AEFA also informed Seltzer that if she rejected

the option of a voluntary resignation, AEFA would then have to code her termination as involuntary, for performance reasons unrelated to securities misconduct. (Magarian Decl. ¶ 7.)

Seltzer and her counsel then threatened to seek emergency injunctive relief prohibiting AEFA from terminating Seltzer and preventing the Company from filing a Form U-5 regarding the termination. (Magarian Decl. Ex. 2.)

After negotiation between counsel for AEFA and Class Counsel, AEFA agreed to postpone the filing of the Form U-5 until after the conclusion of a previously scheduled mediation session, although AEFA made clear that the company would not reconsider its decision to terminate Seltzer. In a May 7, 2001 letter, counsel for AEFA confirmed counsel's understanding that "we also believe it is best to include all issues relating to Susan Seltzer within the scope of the mediation, as you have indicated." (May 7, 2001 from J. Symchych to S. Stockes, Magarian Decl. Ex. 3.)

Over the next few months, AEFA's counsel negotiated with Class Counsel about the disclosures that would be made on the Form U-5. AEFA's counsel finally reached agreement with Class Counsel during a telephone conference on August 30, 2001. During that telephone conversation Maurice O'Brien of Miller-O'Brien PLLP agreed that Seltzer had no objection to AEFA filing a Form U-5 that identified the reason for her termination as "Other -- separation unrelated to any security violation issue." That agreement between counsel for AEFA and Class Counsel was confirmed by a September 7, 2001 letter from Ed Magarian of Dorsey & Whitney to Maurice O'Brien. (Magarian Decl. Ex. 4.) Mr. Magarian subsequently sent Mr. O'Brien a

---

[1]   The information submitted on a U-5 is maintained in the Central Registration Depository ("CRD") for federal and state regulatory authorities and, to some extent, the investing public. The CRD, a computer database that was developed by the NASD and all of the state security commissions, contains current registration information, as well as a record

copy of the Form U-5 that AEFA submitted to the NASD, and he received no objection to the Form from either Seltzer or her counsel. (Magarian Decl. ¶ 10.)

**Seltzer's release of her claims against AEFA.**

AEFA agreed to settle this case in December 2001. (*See* Order Approving Consent Decree p. 3.) On January 17, 2002, plaintiffs filed their Complaint, and the next day the parties filed a Consent Decree, a motion for preliminary approval of the settlement, and two proposed orders. (Order Approving Consent Decree p. 3.)

The Complaint included allegations about the allegedly discriminatory treatment received by Seltzer. Among other things, Seltzer claimed that she "was retaliated against for filing EEOC charges alleging a nationwide pattern of sex discrimination at Amex." (Complaint ¶ 44.) Seltzer alleged that she was given a written warning after she filed the EEOC charges, and was later "terminated after being accused by a human resources representative of staying with the company in order 'to trap us'." (Complaint ¶ 44.)

Seltzer participated in the settlement, and signed an Agreement and Release on October 30, 2003. (*See* Agreement and Release, Magarian Decl. Ex. 5.) In the Release Seltzer agreed to release and discharge "all known and Unknown Claims, rights, duties, remedies or causes of action or liabilities whatsoever" that she had at any time on or before March 20, 2002 against AEFA relating to certain claims and issues. Those claims included:

    a.    the Claims, causes of action, request for relief, allegations, transactions, facts, matters, occurrences, representations, acts, errors or omissions involved, set forth, referred to or asserted in the Complaint filed in Kosen, et al. v. American Express Financial Advisors, et al., Civil Action No. 1:02CV00082, United States District Court, District of Columbia;

---

of the regulatory and enforcement actions, relating to personnel within the securities industry.

    b.    the Claims, causes of action, request for relief, allegations, transactions, facts, matters, occurrences, representations, acts, errors or omissions involved, set forth, referred to or asserted in any administrative charge filed by the Named Plaintiffs;

    c.    any and all liabilities, Claims, and losses of any kind related to this lawsuit; and

    d.    the Claims, causes of action, request for relief, allegations, transactions, facts, matters, occurrences, representations, acts, errors or omissions which arise out of or relate in any way to any gender discrimination or harassment by Releasees against Me.

(Magarian Decl. Exhibit 5, ¶ 1.)

Seltzer also agreed:

> If I have filed or other commenced any lawsuit or other proceeding against Releasees which relate in any way to the matters released in paragraphs 1, 2, or 3 of this Release. I certify that I have dismissed said lawsuit or other proceeding with prejudice. In the event I have not dismissed said lawsuit or other proceeding with prejudice, it shall nonetheless be immediately dismissed and withdrawn upon presentation of this Release.

(Magarian Decl. Exhibit 5, ¶ 5.)

On June 16, 2002, this Court issued an Order and Judgment approving the Consent Decree and establishing the Injunctive Class and Damages Class. The Order stated:

> Res judicata shall apply to the claims of all named plaintiffs and members of the settlement classes, except for: (a) members who have been allowed to exclude themselves from the monetary provisions of the Decree; and (b) members of the Injunctive Class (other than plaintiffs Melissa Poole and Catherine Kelly).

The Order also stated that "the Court shall retain continuing jurisdiction limited to enforcing the Decree."

**Seltzer's claims before the NASD.**

On April 11, 2003, Seltzer submitted a Uniform Submission Agreement and Statement of Claim to the NASD. In the original Statement of Claim, Seltzer alleged that AEFA is liable to her for (1) "blacklisting" her in the securities industry by identifying the reason for her termination on the Form U-5 as "other"; (2) failing to provide her with a copy of a 1999 Form

U-5 that terminated her registration through AEFA when she terminated her financial advisor position in 1999;[2] (3) incorrectly listing the dates that she was registered with AEFA on her Form U-4;[3] and (4) modifying a Form U-4 she submitted after she signed it, by adding "unemployed" to her description of herself as a "homemaker." (*See* Statement of Claim, Thoresen Decl. Ex. 1.)

Seltzer subsequently expanded the scope of her claims in an Amended Claim that she submitted to the NASD. In her Amended Claim, Seltzer states that she is amending her claim "to request an employment retaliation claim" against AEFA. (Amended Claim p. 1, Thoresen Decl. Ex. 2.) Seltzer explained the basis for her retaliation claim in a "Response to Answer" filed with the NASD. In that document she alleged that she was "fired for filing a Class Action lawsuit against American Express Financial Advisors." (Response to Answer p. 4, Thoresen Decl. Ex. 3.) She claims that she was "mobbed[] and taunted and teased by American Express management and co-workers as a result of being a plaintiff in this class action lawsuit." (Response to Answer p. 4, Thoresen Decl. Ex. 3.)

---

[2] When Seltzer terminated her financial advisor position and accepted employment as a brokerage sales consultant, her NASD registration had to be transferred from AEFA to one of its affiliates, American Enterprise Investment Services (AEIS). (Magarian Aff. ¶ 4.) Accordingly, on September 10, 1999 AEFA submitted a Form U-5 stating that Seltzer's affiliation with AEFA had terminated. (*Id.*) She was then re-registered through AEIS. Seltzer claims that she was not provided with a copy of the 1999 Form U-5, and that her registration should not have been transferred.

[3] A Form U-4, the Uniform Application for Securities Industry Registration and Transfer, must be filed by a securities firm whenever a registered representative or some other related professional becomes an employee of the securities firm. This form must be amended to reflect any change in the registration information or a modification of the status of the registrant. There is also a disclosure reporting page on this form which requires the NASD to record all customer complaints reported by the registrant's company. The information on the Form U-4 is maintained in the Central Registration Depository.

Seltzer outlined the damages she is seeking in the NASD arbitration in an "Analysis of Damages" that she produced in response to AEFA's document requests. (Thoresen Decl. Ex. 4.) The damages fall into three categories. First, Seltzer seeks to recover the difference between what she is currently earning as a "Development Officer" and the amount she believes she would be earning if she were still working as an "Investment Specialist." Second, Seltzer is demanding compensation for the "forced lease buy-out of computer and printer." Those alleged damages are based on the $2677.60 she paid to purchase her computer and printer from AEFA in August of 1999 when she terminated her financial advisor position. Finally, Seltzer seeks $34,486.06 for the "loss of sale of financial planning practice." Seltzer claims that this sum is the "present value" of the $4000 of annual income she derived from the practice.

The NASD arbitration hearing on Seltzer's claims is currently scheduled for the week of March 29, 2004.

## ARGUMENT

### I. The Claims Seltzer Has Asserted In The NASD Proceeding Are Barred By The Release She Signed In This Case.

#### A. Seltzer's Retaliation Claim Is Barred By The Release.

Seltzer alleged in the Complaint that she was terminated by AEFA in retaliation for serving as a named plaintiff in this case. The Agreement and Release signed by Seltzer released all claims alleged in the Complaint. Accordingly, Seltzer is barred from pursuing her retaliation claim before the NASD.

Moreover, even if Seltzer's retaliation claim was not specifically pled in the Complaint, it would still be barred. Seltzer also released all claims she had against AEFA which relate in any way to gender discrimination. Seltzer's retaliation claim is premised on the theory that she was terminated for serving as a plaintiff in a lawsuit alleging violations of Title VII. Accordingly,

her retaliation claim is one for employment discrimination in violation of Title VII. *See* 42 U.S.C. § 2000e-3(a) (prohibiting an employer from retaliating against an employee because he or she "has opposed any practice made an unlawful employment practice by this subchapter," or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter"); *Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999); *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000).

Seltzer cannot retain "both the benefit of [a] settlement and the additional right to maintain an action that arose out of the same nucleus of operative facts." *Welsing v. Government of the District of Columbia*, 784 F. Supp. 917, 920 (D.D.C. 1992). "[I]f parties were permitted to initiate an action in one court, settle that action, and then later seek to relitigate the underlying facts in another forum, . . . our judicial system would be undermined." *Welsing*, 784 F. Supp. at 921.

**B.     Seltzer's Claims Related to The 2001 Form U-5 Are Barred by the Release.**

Seltzer's claim that AEFA has "blacklisted" her by identifying the reason for her termination as "other" in the Form U-5 is also barred, because it is part of her retaliation claim. Seltzer asserts that "other" is misleading because the real reason for her termination was discrimination. She claims that "[t]he U-5 should be corrected to reveal what actually transpired, Ms. Seltzer was mobbed and taunted and fired for filing an EEOC Complaint and Class Action lawsuit." (Response to Answer, Thoresen Aff. Ex. 3.) Seltzer further alleges that AEFA's attempt to prevent her from working in the financial services industry is motivated by "vindictiveness and intent to destroy Ms. Seltzer." (Response to Answer, Thoresen Aff. Ex. 3.)

In other words, Seltzer's claim relating to the 2001 Form U-5 is based on the theory that AEFA submitted a false Form U-5 because it failed to disclose that it had discriminated against

- 9 -

her by firing her, and that it used the Form U-5 to "blacklist" her in the securities industry in retaliation for her participation in this lawsuit. Those claims are part of her discrimination and retaliation claims, and Seltzer has released them.

Although the documents Seltzer has filed in the NASD proceeding make clear that her claim regarding the 2001 Form U-5 is part of the discrimination claims she released in this case, that connection is also evident in the communications between counsel when this issue was originally raised in 2001. Seltzer first objected to the content of the proposed U-5 through Class Counsel's April 23, 2001 letter to counsel for AEFA and the accompanying draft memorandum in support of motion for emergency injunctive relief. After receiving that letter and draft memorandum, counsel for the parties agreed to address the Form U-5 as part of the mediation of the class-wide discrimination claims. (*See* May 7, 2001 Letter, Magarian Decl. Ex. 3.) That mediation eventually resulted in the settlement memorialized in the Consent Decree, which Seltzer agreed to.

The damages that Seltzer seeks to recover in the NASD proceeding also demonstrate that her claims are inextricably linked to the claims she made in this proceeding. In the NASD proceeding Seltzer seeks to recover the income she allegedly lost as a result of her termination. Those alleged damages are the same damages that she would have recovered if she had successfully litigated the allegations in the Complaint that she was wrongfully terminated in retaliation for filing a discrimination charge and serving as a named plaintiff in this suit. Seltzer chose to settle that claim, rather than pursue it through trial. The compensation Seltzer received as part of the settlement was to compensate her for her retaliatory discharge claim, as well as her other discrimination claims. Accordingly, Seltzer has already been compensated for her lost income, and she is not entitled to recover the same damages twice. *See General Tele. Co. of the*

*Northwest, Inc. v. Equal Employment Opportunity Commission*, 446 U.S. 318, 333 (1980) ("the courts can and should preclude double recovery by an individual"); *Snowden v. D.C. Transit System, Inc.*, 454 F.2d 1047, 1048 (D.C. Cir. 1971) ("A cardinal principle of law is that in the absence of punitive damages a plaintiff can recover no more than the loss actually suffered."); *Dopp v. HTP Corp.*, 947 F.2d 506, 517 (1st Cir. 1991) ("a plaintiff who is injured by reason of a defendant's behavior is, for the most part, entitled to be made whole – not to be enriched"); *Phelan v. Local 305 of United Ass'n of Journeymen*, 973 F.2d 1050, 1063 (2d Cir. 1992) ("A plaintiff may not recover twice for the same injury."); *Atkinson v. Anadarko Bank and Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987) ("Plaintiffs cannot recover the same damages twice, even though recovery is based on two different theories.").

### C. Seltzer's Claims Related To The 1999 Form U-5 And Her Form U-4 Are Barred By The Release.

Seltzer's claims related to the 1999 Form U-5 and her Form U-4 are also barred by the release because the damages she is seeking are the same damages she received compensation for in the settlement of this case. To the extent she is seeking to recover her lost income, that claim is barred for reasons outlined above. The settlement also compensated her for the other two categories of damages she identified in her "Analysis of Damages." Accordingly, those claims are also barred.

#### 1. Seltzer has already received compensation for her alleged damages related to her computer purchase.

In the NASD proceeding, Seltzer is seeking to recover damages related to the "forced lease buy-out" of her leased computer and printer. (*See* Thoresen Decl. Ex. 4.) This damage claim arises from Seltzer's sublease of a computer and printer from AEFA during the period that she was a financial advisor. At the time Seltzer left that position, there was still some time

remaining on the subleases. (Thoresen Decl. ¶ 5.) Seltzer had the option of reassigning the sublease to another financial advisor, purchasing the equipment, or returning it and paying an early termination penalty. (*See* Thoresen Decl. Ex. 5.) Seltzer chose to purchase the equipment, paying AEFA $2677.60. (*See* Thoresen Aff. Ex. 6.)

Under the theories alleged in the Complaint and Seltzer's EEOC charge, any losses she suffered as a result of the termination of her financial advisor position are traceable to discrimination. That is because Seltzer alleged in the administrative charge she filed with the EEOC that she was constructively discharged from her financial advisor position as a result of discrimination on the part of AEFA.

Seltzer's alleged damages relating to her computer purchase arise out of her alleged constructive discharge because it was the termination of Seltzer's financial advisor position that forced her to chose between purchasing, reassigning or returning her computer. According to the allegations in the EEOC charge, Seltzer would never have resigned her position, and so would never have incurred the computer charges, if she had not been subject to discrimination.

Since the damages Seltzer is attempting to recover related to her computer purchase arise out of AEFA's alleged discrimination, they are covered by the Release and Agreement signed by Seltzer. In the Release, Seltzer agreed to give up "all known and Unknown Claims, rights, duties, remedies or causes of action or liabilities whatsoever" that she had against AEFA relating to discrimination or the allegations made in her EEOC charge. (Magarian Decl. Ex. 5, ¶ 1.) Seltzer received compensation for her alleged constructive discharge in the settlement of this case, and she cannot recover it a second time in the NASD proceeding. *See Phelan*, 973 F.2d at 1063 (reducing back pay award by the amount plaintiff received in prior proceeding before the National Labor Relations Board).

### 2. Seltzer has already received compensation for her alleged damages related to the value of her financial planning practice.

Seltzer also seeks to recover the value of her financial planning practice in the NASD proceeding. (*See* Thoresen Decl. Ex. 4.) Seltzer's loss of the income stream from her financial planning practice was due to the fact that she terminated her position as a financial advisor in August 1999. As previously noted, Seltzer claimed in her EEOC charge that she was constructively discharged from her financial advisor position. Accordingly, any losses she claims to have suffered as a result of her termination from that position arise from the alleged discrimination by AEFA. Since Seltzer released all claims or liabilities that she had against AEFA relating to discrimination or the allegations in her EEOC charge, she has given up her right to pursue recovery for the value of her financial planning practice. (Magarian Decl. Ex. 5, ¶ 1.) Seltzer received compensation for that alleged loss as part of the settlement in this case.

## II. The Order And Judgment Authorizes This Court To Enjoin Seltzer's NASD Proceeding.

The Court's Order and Judgment makes clear that the Court retains continuing jurisdiction over the enforcement of the Consent Decree. Thus, this Court is authorized to enter an Order enjoining Seltzer from pursuing her claims before the NASD.

## CONCLUSION

For the reasons discussed above, this Court should enjoin Seltzer from proceeding before the NASD on the claims alleged in her Statement of Claim and Amended Claim.

DATED: January 23, 2004

Respectfully submitted,

*/s/ Ralph A. Taylor, Jr.*
Ralph A. Taylor, Jr. (DC Bar #225219)
Dorsey & Whitney LLP
Suite 400 South
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2533
(202) 442-3000
(202) 442-3199 - Fax
taylor.ralph@dorsey.com

Edward B. Magarian (pro hac vice)
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Counsel for Defendants
American Express Financial Advisors, Inc.
IDS Financial Services, Inc.
IDS Life Insurance, Inc.
American Express Financial Corporation
American Express Company

Ahna M. Thoresen*
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis MN 55402-3901

Co-Counsel for Defendant American
  Express Financial Advisors, Inc.

* Not admitted to practice in this Court

4811-8780-9792\1